LAW OFFICES
# STILLMAN, FRIEDMAN & SHECHTMAN, P.C.

425 PARK AVENUE
NEW YORK, NY 10022
www.stillmanfriedman.com

CHARLES A. STILLMAN
JULIAN W. FRIEDMAN
PAUL SHECHTMAN
SCOTT M. HIMES
MARJORIE J. PEERCE
JOHN B. HARRIS
JAMES A. MITCHELL
MICHAEL J. GRUDBERG
NATHANIEL Z. MARMUR

CAROLYN BARTH RENZIN
EDWARD J. JOYCE
MARY MARGULIS-OHNUMA
KATIE M. LACHTER
NATHANIEL I. KOLODNY
ELIZABETH S. WEINSTEIN
DANIEL V. SHAPIRO
ERIK M. ZISSU

TELEPHONE
(212)-223-0200

FACSIMILE
(212) 223-1942



MEMO ENDORSED

Pl to submit 2-3 pp response by 7/14/08. Conference on 7/30/08 10:00. No motions about Court scheduling 9th defense motion to be jointly filed (i.e. 1 motion).

SO ORDERED:
Date: 7/8/08
BY MESSENGER
Richard M. Berman, U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/8/2008

RECEIVED
JUL 07 2008
CHAMBERS OF
RICHARD M. BERMAN
U.S.D.J.

Hon. Richard M. Berman, USDJ
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: Automatic Teller Machine Advantage LLC, et al. v. Moore, et al.,
08 CV 3340 (RMB)(FM)

Dear Judge Berman:

This law firm represents Mr. Harry Brossman, one of the defendants in this action. We write on behalf of all defendants pursuant to Rule 2A of Your Honor's Individual Practices to request a pre-motion conference with respect to defendants' anticipated motions to dismiss the Complaint.

Plaintiffs have brought this action using the civil RICO statute, 18 U.S.C. §§ 1962 and 1964, as the sole base for federal jurisdiction. In essence, plaintiffs claim that the defendants fraudulently induced them to invest in Automatic Teller Machines ("ATMs") purportedly installed at various locations, and that the defendants falsely promised to manage, operate and service the ATMs and pay plaintiffs a revenue stream based on the ATM's usage. In fact, plaintiffs allege that the ATMs and/or the locations were non-existent, that they have not received the promised revenue stream and that they have lost the millions of dollars they invested in the so-called ATM Venture.

Defendants intend to seek dismissal of the Complaint on the ground that, under 18 U.S.C. § 1964(c), a RICO claim cannot be based upon "conduct that would have been actionable as fraud in the purchase or sale of securities." This limitation, added by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), bars the use in a RICO action of conduct which could constitute securities fraud, regardless of whether a party casts the conduct as mail or wire

LAW OFFICES
STILLMAN, FRIEDMAN & SHECHTMAN, P.C.

fraud (as plaintiffs have done here). See Fezzani v. Bear, Stearns & Co., Inc., No. 99 cv 0793, 2005 WL 500377, at *3, *5 (S.D.N.Y. March 2, 2005).

Defendants would argue that the investment alleged by plaintiffs is a security under governing law, as briefly set forth below. In deciding whether a venture is a security, courts apply the so-called "economic realities" test, which provides that a sale of securities occurs when there is (1) an investment of money; (2) a common enterprise; and (3) profits to come solely from the efforts of others. SEC v. W.J. Howey Co., 328 U.S. 293, 301 (1946). An investment in a limited liability company, like plaintiff ATMA, "is the sort of instrument that requires 'case-by-case analysis' into the economic realities of the underlying transaction." United States v. Leonard, -- F.3d --, 2008 WL 2357233 at *3 (2d Cir. June 11, 2008).

As to the first prong, plaintiffs specifically allege that the defendants approached them for the purpose of attracting "large scale financing for the purported purpose of investing in the purchase of a large number of Placed ATMs and to then make money managing that investment (the 'ATM Venture')." (Compl. ¶26)[1] Plaintiffs allege that they were induced to invest in the ATM Venture by the expectation that they would realize a profit, the standard by which an "investment" is typically measured. SEC v. Energy Group of America, Inc. 459 F. Supp. 1234, 1239 (S.D.N.Y. 1978).

Under the second prong, New York courts have found a "common enterprise" to exist when there is "strict vertical commonality." See Walther v. Maricopa Intern. Inv. Corp., 97 cv 4816, 1998 WL 186736 (S.D.N.Y. April 17, 1998); H.G. Heine v. Colton, Hartnick, Yamin & Sheresky, 786 F.Supp. 360, 370 (S.D.N.Y. 1992). Strict vertical commonality exists where the fortunes of the investor are tied to the fortunes of the alleged promoter and they rise and fall together. See Revak v. SEC Realty Corp., 18 F.3d 81, 88 (2d Cir. 1994); Dooner v. NMI Limited, 725 F.Supp. 153, 159 (S.D.N.Y.1989). Where the "investors provide the capital and share in the earnings and profits; the promoters manage, control and operate the enterprise," there is a common enterprise. Energy Group of America, 459 F.Supp. at 1240.

The ATM Venture alleged by plaintiffs fits squarely within the definition of strict vertical commonality. The Complaint alleges that the "promoters," Brossman and Munier, managed, controlled and operated ATMA as co-Chief Executives. (Compl. ¶38) Their responsibilities allegedly included identifying and reviewing potential ATM locations for purchase by ATMA, visiting locations where ATMA-had invested in ATMs and reviewing monthly reports delivered by defendant Moore purportedly related to his servicing and revenue collection from the ATMA Machines. (See Compl. ¶40). In addition to a salary taken from the

---

[1] The ATM Venture involved the use of a limited liability company, plaintiff ATMA, of which defendants Munier and Brossman were allegedly members, employees and minority investors. ATMA allegedly received funding from the plaintiff Trusts in order to purchase ATMs at specifically identified locations from defendant 36 Main and would thereafter receive a return on investment from the monthly revenue generated by those ATMs. (Compl. ¶28)

LAW OFFICES
## STILLMAN, FRIEDMAN & SHECHTMAN, P.C.

revenues of the ATM Venture, their additional compensation was directly linked to the success of the investment vehicle: (Compl. ¶38).

The third element of the economic realities test is met where the role of the investors was "merely to provide investment funds" and the business is managed and conducted "without participation by the investors in the company's daily operations." SEC v. Global Telecom Services L.L.C., 325 F. Supp. 2d 94 (D. Conn. 2004). To satisfy the test, "the efforts by those other than the investor (should be) the undeniably significant ones . . . which affect the failure or success of the enterprise." Id.

Plaintiffs claim that every aspect of the operations and business relationships of ATMA was handled by defendants. They allege that Brossman and Munier ran ATMA as co-Chief Executives. (Compl. ¶40). They allege that defendants Netschi and 36 Main found ATM locations to sell to ATMA and that defendant Moore and his company were responsible for managing, servicing and collecting money from the specified ATMs (Compl ¶30-35) Plaintiffs make no allegation that they were involved in the day-to-day management of ATMA in any way and make clear that the extent of their involvement was to receive a monthly report on the net revenues of the machines. (Compl. ¶40). See SEC v. Payne, 35 F. Supp. 873 (S.D.N.Y. 1940) (investment contract existed where investors purchased silver foxes, but never intended to take part in their breeding, raising or marketing; and were essentially buying the right to profits realized through no effort of their own).

Accordingly, defendants respectfully submit that the fraud allegedly underlying the RICO claim involves the sale of a security and is therefore statutorily prohibited. With no underpinning of federal jurisdiction, defendants would assert that the ancillary state law claims should not be resolved by this Court. In addition, defendants would assert that a stay of discovery should be imposed under the PSLRA. Defendants would also move to dismiss the Complaint because plaintiffs have failed adequately to allege the essential elements of RICO, including the existence of a valid pattern, enterprise, etc. Finally, defendants would make individualized arguments, including under Rule 9(b).

For these reasons, defendants request the opportunity to submit motions directed to the validity of the Complaint. The current response date for the defendants is July 16, 2008 and defendants believe they can file their motions by that date if permitted by the Court.

Respectfully submitted,

John B. Harris
*JHarris@stillmanfriedman.com*

Andrew Lankler, Esq. (counsel for plaintiffs)
Stuart E. Abrams, Esq.
Bettina Schein, Esq.
Debra A. Karlstein, Esq. (all by fax)